Verdict accordingly.

---

DISTRICT COURT.                                    JULY 18, 1860.
                        REVENUE.

## IN RE THOMAS MELLOR & CO.

Remission of forfeiture of goods fraudulently invoiced. Duties of the Court and commissioner.

PETITION of Thomas Mellor & Co., praying for an inquiry into the circumstances of an alleged violation of the revenue laws, and for the transmission of the petition and the facts as they might be ascertained by evidence to the Secretary of the Treasury to the end that he might remit, etc. The application was under the act of Congress of March 3, 1797, Section 1.

## STATEMENT.

The petitioners resided in Philadelphia, where they were largely engaged in importing manufactured woollen and cotton goods from Germany. The goods were purchased by them from various makers, and were then forwarded to John Heckerman at Bremen, by whom they were shipped to the petitioners. The invoices sent by Heckerman corresponded in quantity and price with those furnished by the manufacturers, except that an average discount on the cost of two and one-half per cent. allowed by them was increased in Heckerman's invoices to five per cent. Heckerman's invoices were alone exhibited at the Custom House, and it was claimed by the government that the transaction was to the extent of the increase fraudulent.

The petition admitted the irregularity, but claimed that it was offset by a Custom House commission of the same amount illegally imposed.

The claim arose on an importation of goods amounting in value to $512,689. The duties thereon amounted to $118,961.04. Two and one-half per cent. added to the goods would make an increase in value of $12,817.23, on which duties at the rate of twenty per cent. would be $2,951.53.

An action at the suit of the government was pending to recover the value of the goods according to the statute, etc.

## CADWALADER, J.,

having considered the petition, made the following observations.

In cases like the present, I am always ready and willing to hear the witnesses in open court; but the counsel usually prefer the more convenient and equally regular practice of taking the examination before a commissioner in the form of depositions, and presenting them to the court. The effect of this practice is occasionally to present incompetent evidence, which, if originally offered in court, would not have been received, and which, therefore, must be rejected from subsequent consideration. In this case the evidence of the applicant's general reputation, etc., and some other testimony must be excluded.

The act of Congress requires that I should report not the evidence adduced, but the facts proved, meaning, of course, the material facts only. In some cases, when the question to be determined is very simple, and the testimony taken serves the purpose of a statement of facts, this testimony has been returned to the Treasury Department without any distinct report as to its effects. Such a course would not be regular or proper in this case. But I will, in addition to my report of the facts, transmit the whole of the evidence as taken before the commissioner, including those portions of it which are legally incompetent. Hereafter, when a commissioner takes proof, he will not, in general, without the special direction of

the Court, receive testimony, which appears to him clearly inadmissible.

Under the revenue collection laws now in force, ad valorem duties are assessed on the *market value* of goods *purchased* for exportation, and not, as formerly, upon their *actual cost*. But their actual cost must always be more or less important, and must sometimes be the principal, if not sole, criterion of their value. Nothing in the existing system exempts an importer from the former penal consequences of invoicing them below their actual cost with a design to evade the payment of any part of the duties. The decision reported in 17 Howard, 91, shows that the previous legislation and authorities on the subject are applicable under the laws now in force.

Of the facts alleged in the application of the petitioner, he has failed to prove some, of which the materiality might have been so questionable as to induce me to doubt whether they ought, if proved, to have been reported. He does not deny the deduction, in the invoice in question, of a discount which was not actually deducted at the place of exportation. He does not deny his own knowledge that this discount was fictitious, but alleges as an excuse that a commission, which he says that he did not pay, was, under a treasury regulation, added to the alleged cost of the goods as stated in the invoice.

This, if it had been proved, and if the discount and commissions had been of equal amount, would have been immaterial. The commission, when omitted by an importer, is added at the Custom House, because, whether it has been paid by him or not, it enters into the fair market value. The fictitious discount was a deduction of an absolute part of the actual *cost*.

The phraseology of the importer's oath shows conclusively the insufficiency of the alleged excuse.

The only material inquiry is, whether the goods of the importation in question were, to this importer's knowledge invoiced below their actual cost at the port of exportation. If he knew them to be thus under invoiced, his intention to evade the payment of a proportional part of the duty is, I think,

legally deducible.  I also think that his admission of the forfeiture includes an admission of the fraudulent intent without which it would not have been incurred.

I report the facts to be that the goods in question, when entered by the petitioner, were to his knowledge invoiced below their actual cost at the port of exportation to the extent of the discount of five per cent., and that they were thus invoiced below their actual cost to evade the payment of a corresponding part of the duties thereupon.  I cause this my statement of facts to be annexed to the applicant's petition, and direct that the same and the subjoined evidence taken as aforesaid be transmitted to the Secretary of the Treasury.